IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CT-03059-M-RJ

ROBERT JEREMY HAYNES,           )
                                )
                 Plaintiff,     )
                                )
         v.                     )                    ORDER
                                )
OFFICER T. RICHARDS, et al.,    )
                                )
                 Defendants.    )

This cause is before the court on defendant Deas' motion for summary judgment, Mot.
[D.E. 82], and plaintiff's motions for default judgment, Mot. [D.E. 102]; Mot. [D.E. 103]. As
discussed below, Deas' motion is granted, plaintiff's earlier motion for default judgment is denied
as moot, and the court refers the later motion for default judgment for an evidentiary hearing.

Relevant Procedural History:

On February 1, 2023, Robert Jeremy Haynes ("plaintiff"), a state inmate proceeding
without prepayment of fees, filed *pro se* a complaint under 42 U.S.C. § 1983.    [D.E. 1, 6, 9].

On February 28, 2023, the action was transferred to this court.    Order [D.E. 3].

On June 13, 2023, the court allowed the action to proceed against Tyler J. Richards
("Richards") and Daniel Deas ("Deas"), see Order [D.E. 11], and issued requests for waivers of
service [D.E. 12].

On August 11, 2023, Deas' waiver of service was returned executed, Richards' last known
address was provided under seal, and summons issued as to Richards.    See [D.E. 19, 20, 21].

On October 5, 2023, summons was returned executed as to Richards.    [D.E. 25].

On October 10, 2023, Deas answered the complaint.    Answer [D.E. 27].

On November 1, 2023, the court directed Richards to answer the complaint and warned him that failure to do so may result in an entry of default and default judgment. Order [D.E. 29].

On November 13, 2023, plaintiff moved for entry of default. See Mot. [D.E. 30]. Because Richards had failed to answer, on December 14, 2023, the court granted this motion and directed the clerk to enter default against Richards. See Order [D.E. 32]; [D.E. 33].

On December 18, 2023, the court entered a scheduling order. Order [D.E. 34].

On February 8, 2024, plaintiff moved for an extension of time to complete discovery, Mot. [D.E. 36], and for default judgment as to Richards, Mot. [D.E. 37]. Also on that date, the court granted plaintiff's motion to extend time. Order [D.E. 38].

On March 4, 2024, the court, *inter alia*, set aside the entry of default as to Richards, denied without prejudice plaintiff's motion for default judgment, directed the clerk to update the docket to reflect Richards' address of record that previously had been filed under seal, and admonished the parties to serve future filings on each party. See Order [D.E. 39].

On March 29, 2024, plaintiff moved to compel discovery. Mot. [D.E. 42].

On April 8, 2024, Deas moved for an extension of time to complete discovery and file dispositive motions, Mot. [D.E. 44], and for an extension of time to respond to plaintiff's interrogatories, Mot. [D.E. 45]. The court granted these motions. Order [D.E. 46].

On April 22, 2024, plaintiff moved for an order directing Richards to answer plaintiff's interrogatories. See Mot. [D.E. 47].

On May 7, 2024, Deas moved for an extension of time to complete discovery. See Mot. [D.E. 49]. The court granted this motion. Order [D.E. 50].

On June 10, 2024, plaintiff filed a "declaration for entry of default." [D.E. 51].

2

On June 12 and 13, 2024, Deas moved to extend case management deadlines and to deem the motion timely filed. See [D.E. 52, 53]. The court granted these motions. Order [D.E. 56].

On June 14, 2024, plaintiff moved for copies of discovery. Mot. [D.E. 54].

On June 17, 2024, plaintiff moved for copies. Mot. [D.E. 55].

On June 27, 2024, Deas moved to extend case management deadlines. Mot. [D.E. 58].

On June 28, 2024, the court, *inter alia*: denied plaintiff's motion to compel discovery – as moot with regards to Deas and without prejudice as to Richards; denied without prejudice plaintiff's motion for an order directing Richards to respond to interrogatories; granted in part plaintiff's motions seeking copies, directed that plaintiff be sent a copy of the complaint and Deas' answer, and directed the North Carolina Attorney General's Office to re-send plaintiff any discovery already produced; granted Deas an extension of time to respond to plaintiff's interrogatories; and extended the discovery and dispositive motion deadlines. Order [D.E. 59].

On July 8, 2024, plaintiff moved for entry of default as to Richards. Mot. [D.E. 63].

On July 29, 2024, plaintiff moved for default judgment as to Richards. Mot. [D.E. 70].

On August 6, 2024, Deas moved to extend the discovery and dispositive motion deadlines. Mot. [D.E. 74]. The court granted this motion. Order [D.E. 75].

On October 30, 2024, Deas moved for summary judgment, Mot. [D.E. 82], and filed a memorandum in support [D.E. 83], a statement of material facts [D.E. 84], an appendix [D.E. 85], and proposed sealed exhibits [D.E. 86]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about Deas' motion for summary judgment, the response deadline, and the consequences of failing to respond. [D.E. 87].

On October 31, 2024, Deas moved to seal exhibits. Mot. [D.E. 88].

3

On November 7, 2024, plaintiff moved for an extension of time to respond to Deas' motion for summary judgment. Mot. [D.E. 89]. The court granted this motion in part, allowing plaintiff until December 5, 2024, to file his response. Order [D.E. 91].

On November 26, 2024, plaintiff filed a response to Deas' motion for summary judgment with a statement of material facts, an appendix, and a declaration, see [D.E. 93, 93-1, 93-2, 93-3].

On February 21, 2025, the court, *inter alia*: granted plaintiff's motion for entry of default and directed the clerk to enter default against Richards; denied without prejudice plaintiff's motion for default judgment; granted Deas' motion to seal; again admonished the parties that electronic service is insufficient as to plaintiff or Richards; reminded parties they must serve future filings on each party to the suit; and directed the North Carolina Attorney General's Office to inform the court, under seal, if necessary, why Richards is not represented in this action. Order [D.E. 96].

On February 26, 2025, the clerk entered default against Richards. [D.E. 98].

On February 27, 2025, the court granted a motion to seal the North Carolina Attorney General's response as to why it was not representing Richards in the action. Order [D.E. 101].

On February 28 and March 6, 2025, respectively, plaintiff filed the instant motions seeking default judgment as to Richards. See Mot. [D.E. 102]; Mot. [D.E. 103].

<u>Defendant Deas' Motion for Summary Judgment</u>:

1) <u>Statement of Facts</u>:

As noted below, the facts are somewhat disputed. On October 9, 2022, plaintiff threw feces at Correctional Officer Revell, but Deas and plaintiff disagree as to the particulars. <u>Compare</u> Deas' Stmt. Mat. Facts [D.E. 84] at ¶1 (stating plaintiff "asked Correctional Officer Anthony Revell if he could clean up some trash in his cell but instead threw urine and feces at

4

him"), with Pl.'s Stmt. Mat. Facts [D.E. 93-1] at ¶1 (stating, "I disagree with the first fact because I did not tell him I had trash to throw out."  Instead, plaintiff states: he told Revells to "shut his fat ass mouth [sic]"; Revells said, "Your Mama [sic]"; plaintiff told Revells to open the food-slot trap door and say that again, and Revells did so; and plaintiff then threw feces on Revells).

Defendant Richards responded to plaintiff's cell, and plaintiff pulled away during an escort, but Deas and plaintiff disagree as to the particulars.  Compare Deas' Stmt. Mat. Facts [D.E. 84] at ¶2 (stating: "Richards arrived and began to escort plaintiff to decontamination"; and "Plaintiff began to pull away from Officer Richards"), with Pl.'s Stmt. Mat. Facts [D.E. 93-1] at ¶2 (stating plaintiff partially agrees with this fact but, also: Richards told him he was going to the nurse, not to decontamination; Richards held his right arm, and another officer held his left arm; because they could not fit three side-by-side descending stairs, Richards stood a step above, still holding plaintiff's right arm, and lifting him off his feet; and plaintiff pulled away to regain his balance).

Richards first reacted verbally, but Deas and plaintiff disagree as to the particulars. Compare Deas' Stmt. Mat. Facts [D.E. 84] at ¶3 (stating Richards ordered plaintiff to stop, but he did not); with Pl.'s Stmt. Mat. Facts [D.E. 93-1] at ¶3 (stating, "Richards did not order me to stop, but threatened to hurt me if I didn't stop, and called me 'bitch' and 'faggot' several times.").

Richards then used hands-on force, but Deas and plaintiff disagree as to the particulars. Compare Deas' Stmt. Mat. Facts [D.E. 84] at ¶4 (stating, "Richards placed [him] against a slider and ordered him to proceed to the shower, but [he] refused this command too."); with Pl.'s Stmt. Mat. Facts [D.E. 93-1] at ¶4 (stating: due to Richards' cursing and threatening him, he "continued to pull away"; Richards threatened to do him bodily harm in the decontamination room, and he tried to get away from Richards; he "asked Sergeant Deas to separate [him] and Richards, but

5

[Deas] refused"; and "Richards pushed [him] into the block slider face first and ordered [him] to leave the block," but he "could not leave the block because Richards held [him] against the slider").

Deas and plaintiff disagree whether plaintiff spat in Richards' face. <u>Compare</u> Deas' Stmt. Mat. Facts [D.E. 84] at ¶¶5, 7 (stating plaintiff spat on Richards, which Deas saw); <u>with</u> Pl.'s Stmt. Mat. Facts [D.E. 93-1] at ¶¶5, 7 (disagreeing with Deas' statements and stating, *inter alia*, he "never spit on Richards or anyone on 10-9-22," but "turned to ask [Richards] how [he] was [supposed] to leave the block while [Richards] held [him] against the door, and to curse [Richards] for being stupid enough to hold [him] down and simultaneously [give him] an order to move").

Richards took plaintiff to the floor, but Deas and plaintiff disagree as to the particulars. <u>Compare</u> Deas' Stmt. Mat. Facts [D.E. 84] at ¶6 (stating, "Richards responded by placing [plaintiff] on the floor to prevent any further assaults"); <u>with</u> Pl.'s Stmt. Mat. Facts [D.E. 93-1] at ¶6 (stating: "Richards did not 'place' [him] on the floor"; Richards "maliciously and sadistically picked [him] up off [his] feet while [his] hands were cuffed behind [his] back and slammed [him] face first into the floor"; and "this was not to prevent further assault" because he "had not assaulted" Richards, but "to cause [him] serious physical harm").

Deas helped put plaintiff in full restraints; plaintiff was escorted to a holding cubicle and taken to medical; he told medical staff, "I'm okay.    I don't even feel it"; and medical staff reported a 1.5-inch laceration near his left eyebrow, cleaned the area, and applied gauze. <u>See</u> Deas' Stmt. Mat. Facts [D.E. 84] at ¶¶8–10; Pl.'s Stmt. Mat. Facts [D.E. 93-1] at ¶¶8–10 (adding, his statement was made "to keep the officers present from having gratification from hearing [him] complain.").

On October 11, 2024, plaintiff filed a grievance about this incident, but his "only allegation about Sergeant Deas was that he went around to staff to make sure everyone's story was the same."

Deas' Stmt. Mat. Facts [D.E. 84] at ¶¶11–12; but see Pl.'s Stmt. Mat. Facts [D.E. 93-1] at ¶12 (stating that, when he filed the grievance, he was unaware that Deas had "violated [his] Eighth Amendment rights," which he only understood after later corresponding with an attorney).

On February 1, 2024, plaintiff filed this action alleging claims against Richards and Deas. See Deas' Stmt. Mat. Facts [D.E. 84] at ¶13. "Deas answered the complaint, denying all allegations against him and asserting failure to exhaust administrative remedies as an affirmative defense." Id. at ¶14; but see Pl.'s Stmt. Mat. Facts [D.E. 93-1] at ¶14 (stating he exhausted administrative remedies with all information available to him at the time).

2) Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

7

3) Discussion:

As to Deas' involvement in the October 9, 2022, incident in question, plaintiff's complaint alleges, *in toto*: "Sergeant Deas stood and watched Richards slam me and did nothing to protect me. As me and Richards cursed each other, and Richards threatened to harm me in the D-Con shower, Sergeant Deas did not split us up [sic]." Compl. [D.E. 1] at 5.

Deas argues, *inter alia*, that plaintiff failed to exhaust administrative remedies as to his claims against Deas because plaintiff's prison grievance regarding the October 9, 2022, incident merely states that Deas assisted other officers in getting their stories together, but did not mention that Deas failed to protect him from Richards' use of force. See Deas Mem. [D.E. 83] at 5–7.

In response, plaintiff argues that he exhausted all administrative remedies with all the facts available to him at the time. Pl.'s Resp. [D.E. 93] at 2.

The Prison Litigation Reform Act ("PLRA") states: "No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."); Porter v. Nussle, 534 U.S. 516, 532 (2002) (noting "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Successful exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (citation, alteration, and internal quotation marks omitted).

8

PLRA administrative exhaustion, however, is mandatory only if the grievance procedure is "available." Ross v. Blake, 578 U.S. 632, 643–44 (2016) (finding grievance procedure "unavailable" when: 1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) it is "so opaque that it becomes, practically speaking, incapable of use"; and 3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."); see Griffin v. Bryant, 56 F.4th 328, 335–39 (4th Cir. 2022).

"The main purpose of the PLRA's exhaustion requirement is 'allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record.'" Wilcox v. Brown, 877 F.3d 161, 167 n.4 (4th Cir. 2017) (quoting Moore v. Bennette, 517 F.3d 717, 726 (4th Cir. 2008)). "To satisfy the exhaustion requirement, grievances generally need only be sufficient to 'alert[ ] the prison to the nature of the wrong for which redress is sought.'" Id. (quotation omitted)).

Failure to exhaust administrative remedies is an affirmative defense that defendants generally must plead and prove. See Jones, 549 U.S. at 216–17; Wilcox, 877 F.3d at 167; Custis v. Davis, 851 F.3d 358, 361–63 (4th Cir. 2017).

The North Carolina Department of Public Safety ("DPS"), now known as the North Carolina Department of Adult Correction ("DAC"), has a three-step inmate grievance Administrative Remedy Procedure ("ARP"). See Moore, 517 F.3d at 721–22; see also Harris v. Midford, No. 1:10-CV-263-RJC, 2011 WL 1601446, at *2 (W.D.N.C. Apr. 27, 2011) (noting PLRA exhaustion requires North Carolina inmates to complete all three steps of the ARP).

9

Plaintiff's relevant October 11, 2022, grievance states, *in toto*:

On the date of 10-9-22[,] while being escorted by several staff members in A-block on Essex unit with my hands cuffed behind my back, Officer Richards threatened to do bodily harm to me and cussed me[,] calling me "bitch" and "faggot" several times. In return[,] I cussed him back[,] feeding the fire of his rage which was already burning due to the fact that I had just threw [sic] feces and urine on one of his fellow officers. After getting me to the A-Block slider and off the A-Block Cameras, Officer Richards pushed me into the frame of the A-Block's door. At this time[,] I turned to curse him again, and when I called him a "bitch[,]" he slammed me face first into the floor[,] going down on top of me and shoving my face into the concrete with the intention of causing maximum injury to my face. His goal in doing this was pretty successful[,] for my left eyebrow was bursted [sic] open, it's full and complete length would later that night require 8 or 9 stitches to be sewn up. Also, the blow was so harsh that it gave me a fracture underneath the left eye as well[;] my left eye is now horribly swollen so that I can barely see out of my left eye. Officer Richards is trying to lie and justify his actions of rage by saying I spat on his face. However, This is a complete 100% lie! I have two witnesses who seen [sic] the entire thing who will swear to it. Also[,] it is on camera how Sergeant Deese [sic] and his staff went around with DC-138B's [statement by witness forms] getting their story together and making sure they matched up. They also went to the control booth to work on it as well. I did not spit on anyone. My injury is essive [sic] use of force in retaliation for me throwing feces and urine on another officer.

Deas' App., Ex. 3 [D.E. 85-3] at 12–14.

As for a remedy, plaintiff requests: "The removal of Officer Richards from his job and to allow me to press charges for assault, and to be paid for the permanent mark of injury in the form of a scar which will be left after my large wound heals and the stitches are removed." Id. at 14.

The record reflects that a December 5, 2022, Step-3 Administrative Remedy Response fully exhausted this October 11, 2022, grievance, id. at 11, and that plaintiff fully exhausted only one other, unrelated grievance in the relevant timeframe, id. at 10 (memo by Kimberly D. Grande, Executive Director of the Inmate Grievance Resolution Board); id. at 2–9 (Dec. 22, 2022, grievance as to a separate use-of-force incident involving Deas, Richards, Officer M. Anderson, and Officer Harris that occurred on Oct. 23, 2022, and was fully exhausted on Feb. 2, 2023).

10

Plaintiff's October 11, 2022, grievance states that Richards' use of force was excessive, and that Deas later went around to get officers stories to "match up," but nothing in this grievance alerted officials of any claim that Deas or other officers failed to protect plaintiff from Richards' force. Cf. Wilcox, 877 F.3d at 167 n.4. Exhaustion is not *per se* inadequate merely because a suit later names an individual not identified in the grievance. See Jones, 549 U.S. at 219. Nevertheless, "if the grievance fails to give prison authorities fair notice of, and the opportunity to address, the problem that will later form the basis of the suit against that defendant, dismissal of that defendant is appropriate." Davidson v. Davis, No. 3:13-CV-590-FDW, 2015 WL 996629, at *3 (W.D.N.C. Mar. 6, 2015) (citing Johnson v. Johnson, 385 F.3d 503, 516–17 (5th Cir. 2004)).

Because plaintiff's October 11, 2022, grievance did not give prison authorities fair notice of, and an opportunity to address, failure-to-protect claims, the claim against Deas in plaintiff's instant complaint is unexhausted and dismissal of the action against Deas is appropriate. See id. (dismissing a failure to supervise claim against a defendant where the plaintiff's administrative grievance allegations focused on excessive force and did not mention failure to supervise); see also Moore, 517 F.3d at 729 (finding prisoner's exhaustion of grievances as to inadequate medical treatment for Hepatitis C and pancreatic condition failed to exhaust claims alleging inadequate treatment for gout, a condition he did not mention in his exhausted grievances).

Although plaintiff states that he only learned from an attorney that Deas may be liable on a failure-to-protect claim after he submitted his grievance, see Pl.'s Stmt. Mat. Facts [D.E. 93-1] at ¶12, his purported lack of awareness does not render exhaustion "unavailable" or otherwise excuse his failure to exhaust this claim before filing this action, see Ross, 578 U.S. at 643–44; id. at 641 ("The PLRA's history (just like its text) thus refutes a 'special circumstances' exception to

11

its rule of exhaustion."); Woodford, 548 U.S. at 93 (noting "the PLRA exhaustion requirement requires proper exhaustion"); Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001) (noting the PLRA requires exhaustion of administrative remedies "regardless of the relief offered through administrative procedures," and the Supreme Court "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"); Williams v. Carvajal, 63 F.4th 279, 290 (4th Cir. 2023) ("Simple unawareness [of an administrative remedy], however, does not rise to the level of unavailability."); Moore, 517 F.3d at 725 (noting "a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are" (citations omitted)).

After considering the record evidence and the reasonable inferences drawn therefrom in the light most favorable to plaintiff, see Scott, 550 U.S. at 378, Deas has met the burden of showing the absence of a genuine issue of material fact regarding plaintiff's failure to exhaust administrative remedies as to his instant claims against Deas before filing this action, Celotex, 477 U.S. at 325; see Jones, 549 U.S. at 216–17; Wilcox, 877 F.3d at 167, but plaintiff has not come forward with specific facts showing that the ARP was "unavailable" to him, cf. Matsushita, 475 U.S. at 587.

Accordingly, Deas is entitled to summary judgment, Anderson, 477 U.S. at 249; see Jones, 549 U.S. at 211; Woodford, 548 U.S. at 85, the court dismisses the action without prejudice as to Deas, see Moss v. Harwood, 19 F.4th 614, 623 n.3 (4th Cir. 2021) (collecting cases), and the court need not consider Deas' additional arguments in support of the motion for summary judgment.

<u>Plaintiff's Motions for Default Judgment</u>:

The court finds that the earlier motion for default judgment as to Richards [D.E. 102] is moot for the reasons noted the later motion for default judgment as to Richards, see [D.E. 103].

The court, in its discretion, also refers the later motion for default judgment as to Richards [D.E. 103] for an evidentiary hearing to "determine the amount of damages" and "establish the truth of any allegation by evidence."   Fed. R. Civ. P. 55(b)(2)(B), (C).

Conclusion:

For the reasons discussed above, the court: GRANTS defendant Deas' motion for summary judgment [D.E. 82]; DISMISSES WITHOUT PREJUDICE the action against Deas for failure to exhaust administrative remedies; DENIES AS MOOT plaintiff's earlier motion for default judgment as to defendant Richards [D.E. 102]; REFERS the later motion for default judgment as to Richards [D.E. 103] to Magistrate Judge Robert B. Jones, Jr. for an evidentiary hearing and recommendation on damages; and APPOINTS North Carolina Prisoner Legal Services, Inc. for the limited purpose of assisting plaintiff with this hearing, see Standing Order 21-SO-11 at ¶7. Judge Jones will notify the parties how he wishes to proceed concerning the hearing.

SO ORDERED this 28th day of July, 2025.

RICHARD E. MYERS II
Chief United States District Judge

13