IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:23-CT-3059-M

|  |  |  |
|---|---|---|
| ROBERT JEREMY HAYNES, | ) | |
| Plaintiff, | ) ) | **MEMORANDUM AND** |
| v. | ) ) | **RECOMMENDATION** |
| TYLER J. RICHARDS, | ) ) | |
| Defendant. | ) | |

This matter is before the court on Plaintiff Robert Jeremy Haynes's ("Haynes") motion for default judgment, and for a hearing and recommendation on damages regarding the same after the court entered default against Defendant Tyler J. Richards ("Richards"). [DE-96, -98, -103, -121]. The court held a hearing on December 11, 2025, at which Haynes, represented by counsel, appeared and testified, and Richards failed to appear. [DE-126]. For the reasons that follow, it is recommended that the court enter default judgment against Richards, and award Haynes $15,000.00 in compensatory damages.

## I. PROCEDURAL HISTORY

On February 1, 2023, Haynes, a state inmate proceeding pro se, filed a complaint under 42 U.S.C. § 1983 in the United States District Court for the Western District of North Carolina alleging violations of his Eighth and Fourteenth Amendment rights. [DE-1]. On February 28, 2023, the action was transferred to this court because Haynes's allegations arise out of events occurring at Eastern Correctional Institution located within the Eastern District of North Carolina. [DE-3]. On August 11, 2023, a summons was issued to Richards which was returned executed on

October 5, 2023. [DE-21, -25]. However, Richards never answered the complaint, and on November 13, 2023, Haynes moved for entry of default against Richards, which this court granted but later set aside because the motion was not served on Richards. [DE-30, -32, -39]. On July 8, 2024, Haynes again filed for entry of default as to Richards, [DE-63], which the court granted, [DE-96] at 4. The court directed the Clerk of Court to enter default against Richards pursuant to Fed. R. Civ. P. 55(a). [DE-98]. Haynes filed a second motion for default judgment on March, 6, 2025. [DE-103]. The motion for default judgment has been referred to the undersigned for a hearing and recommendation on damages as to Richards. [DE-108]. Accordingly, the court held an evidentiary hearing on December 11, 2025 at which Haynes and his counsel appears; Richards did not appear at the hearing. [DE-126].

## II. STATEMENT OF FACTS

### A. Complaint

The following facts were alleged by Haynes in his complaint. On October 9, 2022, while Haynes was incarcerated at Eastern Correctional Institution, officer Richards slammed Haynes on his face while Haynes's hands were cuffed behind his back. Compl. [DE-1] at 5. Haynes's resulting injury required nine stitches and left a five-inch permanent scar on his left eyebrow. *Id.*

Haynes's complaint explains he now suffers from headaches due to this injury. *Id.* at 7. Through this lawsuit, Haynes seeks the justice he was unable to get through the prison administrative process. *Id.* at 8. Haynes is asking for damages for his injury and scar, in the amount of $200,000.00. *Id.*

### B. Evidentiary Hearing

The undersigned held a hearing on December 11, 2025, at which Haynes testified and Richards did not appear. [DE-126]. Haynes's counsel introduced and the court admitted four

exhibits at the hearing: Video of the incident, Ex. 1; Picture of a pool of blood, Ex. 2; Haynes's UNC Health Medical Records, Ex. 3; and Department of Public Safety Medical records, Ex. 4. [DE-127].

First, Haynes's counsel introduced and played a video of the incident. *See* Ex. 1. The video depicts Haynes being led through a doorway by two officers, one on each side. Ex. 1 at 00:05. The officer on Haynes's right side, Richards, abruptly lifts Haynes off the ground and slams him forward, face first, onto the concrete floor. *Id.* at 00:07. Three additional officers enter behind them, one taking the place of Richards who goes back through the doorway, and seconds later Richards returns and walks through the room to exit through another doorway. This occurs while Haynes is pinned to the floor by two officers, his hands still restrained behind his back.

Haynes testified as follows at the hearing: The officer who lifted and slammed him down onto the floor was Tyler Richards. Hr'g Tr. at 9:7–9:17. Haynes's hands were handcuffed behind his back when he was slammed down onto the floor. *Id.* at 10:2–10:7. Immediately following the incident Haynes was confused and in pain. *Id.* at 10:12–10:14. He had a laceration on his face going over his left eyebrow. *Id.* at 11:17. He bled on the floor, as seen on the video and in Ex. 2, a still picture of the pool of blood that was left after he was taken to the nurse. *Id.* at 10:20–11:9. While Haynes was on the floor officers applied additional restraints before taking him to see medical staff, who immediately referred him to the hospital. *Id.* at 12:1–12:6.

At the hospital Haynes received eight stitches for the laceration and a CT scan, which verified he had an acute left orbital floor fracture. *Id.* at 12:10–12:18; Ex. 3. Additionally, Haynes suffered from headaches, for which he took Tylenol, and severe bruising and swelling around his eye. Hr'g Tr. at 14:7–14:19. Haynes now suffers from Post Traumatic Stress Disorder ("PTSD"),

3

as the incident has left him with mistrust of the correctional staff and being restrained. *Id.* at 14:20–14:25.

After the incident Haynes filed a grievance with the facility, receiving a response that Richards's actions were done in response to Haynes's actions. *Id.* at 15:1–15:6. Leading up to the incident Richards and the other officer were transporting Haynes from his cell down some stairs while his hands were restrained behind his back. *Id.* at 16:6–16:21. Haynes, feeling as though he was going to fall, jerked his arm away from Richards to regain his balance. *Id.* Richards then started threatening Haynes by telling him he would take him to the decontamination room, where there were no cameras, and assault him. *Id.* at 16:15–16:19. Concerned for his safety, Haynes refused to go to the decontamination room. *Id.* at 16:25–17:4. That is when Richards lifted Haynes off the ground and slammed him face-first onto the concrete floor. *Id.* at 17:13–17:14

After Haynes completed his testimony, his counsel offered a summation that included argument related to damages. *Id.* at 19:19–23:4. Specifically, counsel argued that in Haynes's case, at least $30,000.00 in compensatory damages are warranted based on the compensatory damages awarded in a similar case, *Sorto v. McDonald*, No. 5:15-CT-3131-D, 2018 WL 4404714 (E.D.N.C. Aug. 20, 2018), *adopted*, 2018 WL 4356767 (E.D.N.C. Sept. 12, 2018). *Id.* at 21:9–23:4, 27:7–27:14. Counsel stressed that Haynes was restrained at the time of the assault, *id.* at 22:13–22:21, and the psychological impact the assault has had on Haynes, *id.* at 24:12–24:17.

### III. LEGAL STANDARD

Once default has been entered under Rule 55(a) of the Federal Rules of Civil Procedure, Rule 55(b)(2) authorizes the court to enter default judgment against a properly served defendant who fails to file a timely responsive pleading or otherwise properly defend their case. Upon default, the well-pleaded facts alleged in the complaint, as to liability, are deemed admitted. *Ryan*

*v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *E.E.O.C. v. Carter Behav. Health Servs., Inc.*, No. 4:09-CV-122-F, 2011 WL 5325485, at *3 (E.D.N.C. Oct. 7, 2011), *adopted by*, 2011 WL 5325473 (E.D.N.C. Nov. 3, 2011). However, "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Rather, the court must consider whether the unchallenged facts support the relief sought. *Id.*

If the court determines that default judgment should be entered, it must then determine the "amount and character of the recovery that should be awarded." *Etters v. Shanahan*, No. 5:09-CT-3187-D, 2013 WL 787344, at *4 (E.D.N.C. Feb. 6, 2013) (citation omitted) report and recommendation adopted, 2013 WL 792834 (E.D.N.C. Mar. 4, 2013); *accord Carter Behav. Health Servs., Inc.*, 2011 WL 5325485, at *4. "Section 1983 creates 'a species of tort liability,' [*Carey v. Piphus*, 435 U.S. 247, 253 (1978)], and, therefore, 'when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts[,]' [*Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986)]." *Evans v. Hous. Auth. of City of Raleigh, N.C.*, No. 5:04-CV-291-FL, 2008 WL 2550756, at *7 (E.D.N.C. June 25, 2008) (citation omitted). "While '[d]eterrence is . . . an important purpose of [§ 1983] . . . it operates through the mechanism of damages that are compensatory—damages grounded in determinations of plaintiffs' actual losses.'" *Id.* (quoting *Stachura*, 477 U.S. at 307). Punitive damages may be awarded to plaintiffs in a § 1983 action "to deter or punish malicious deprivations of rights." *Carey*, 435 U.S. at 266.

A plaintiff's inability to prove out-of-pocket loss or monetary harm does not bar a claim for compensatory damages under § 1983. *Whisnant v. Hill*, No. 5:17-CT-03047-BO, 2020 WL

5

1901085, at *6 (E.D.N.C. Jan. 17, 2020) (citing *Nimmons v. Clark*, No. 1:13-CV-03786, 2015 WL 1191210, at *3 (N.D. Ga. Mar. 16, 2015) ("A federal court may award monetary damages, under Section 1983, for pain and suffering even if the plaintiff cannot present evidence of out-of-pocket loss or monetary harm.") (citations omitted)), *adopted by*, 2020 WL 917253 (E.D.N.C. Feb. 26, 2020); *Oxendine-Bey v. Harihan*, No. 5:12-CT-03084-FL, 2015 WL 5331809, at *7 (E.D.N.C. July 22, 2015) (same), *adopted by*, 2015 WL 5330571 (E.D.N.C. Sept. 14, 2015). However, "courts scrupulously analyze an award of compensatory damages for a claim of emotional distress predicated exclusively on the plaintiff's testimony." *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1251 (4th Cir. 1996) (citations omitted); *Carrington v. Easley*, No. 5:08-CT-3175-FL, 2011 WL 2132850, at *4 (E.D.N.C. May 25, 2011) (denying an award of compensatory damages when plaintiff failed to submit evidence showing he sought clinical, psychological, or other treatment). "[I]n determining the propriety and amount of compensatory damages, courts look to factors such as loss of esteem, physical injury, psychological counseling, loss of income, the degree of distress, the context of the underlying events, corroborative evidence, the nexus between the challenged conduct and distress, and mitigating circumstances." *Carrington*, 2011 WL 2132850, at *4 (citing *Price*, 93 F.3d at 1254).

Finally, the Prison Litigation Reform Act ("PLRA") establishes limitations on recovery of compensatory damages by prisoners in civil lawsuits by providing that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e; *see Simmons v. Salmon*, No. 5:23-CT-3185-D, 2025 WL 2388605, at *5 (E.D.N.C. May 21, 2025) (citing *Miller v. Clark*, No. 3:11-CV-00557, 2011 WL 6955512, at *3 (S.D.W. Va. Dec. 9, 2011) ("Moreover, to maintain a plausible claim for compensatory damages, the prisoner must

6

assert and prove that a physical injury resulted from the violation. Allegations of an emotional injury without an underlying physical injury are insufficient to support an award of compensatory damages."), report and recommendation adopted, 2025 WL 2371841 (E.D.N.C. Aug. 15, 2025)); *Hudson v. Sessoms*, No. 5:20-CT-3269-D, 2023 WL 2818716, at *5 (E.D.N.C. Feb. 6, 2023), report and recommendation adopted, 2023 WL 2816826 (E.D.N.C. Apr. 6, 2023); *Whisnant*, 2020 WL 1901085, at *7; *Wilks v. Sloan*, No. 3:18-CV-01401, 2019 WL 2550536, at *3 (S.D.W. Va. May 20, 2019), report and recommendation adopted, 2019 WL 2553626 (S.D.W. Va. June 19, 2019); *Jones v. N. Carolina Dep't of Pub. Safety*, No. 5:16-CT-3176-D, 2017 WL 10187843, at *4 (E.D.N.C. May 5, 2017), report and recommendation adopted sub nom., *Jones v. NC Dep't of Pub. Safety*, 2018 WL 4088766 (E.D.N.C. Aug. 27, 2018); *Richardson v. Bostick*, No. 5:11-CT-3045-FL, 2014 WL 3508916, at *16 (E.D.N.C. July 14, 2014); *Etters*, 2013 WL 787344, at *4.

## IV. DISCUSSION

### A. Default Judgment

The court should find that Haynes has established Richards's liability under § 1983 for violating Haynes's Eighth Amendment rights. Section 1983 creates civil liability for any person acting under color of state law who deprives a plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. In other words, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Reynolds v. U.S. Gov't*, No. 7:22-CV-00178-FL, 2023 WL 5826901, at *23 (E.D.N.C. July 21, 2023) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988); citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)), *adopted by*, 2023 WL 5350566 (E.D.N.C.

Aug. 21, 2023). By alleging that Richards, a corrections officer, physically assaulted him while he was imprisoned at Eastern Correctional Institution, Haynes has met both requirements.

Beginning with the "color of state law" requirement, "[a]s a general rule, 'a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.'" *Conner v. Donnelly*, 42 F.3d 220, 223 (4th Cir. 1994) (quoting *West*, 487 U.S. at 50); *see also Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 936 n.18 (1982) (finding that "state employment is generally sufficient to render the defendant a state actor"). However, even where a public employee acts outside of his official duties, if his purportedly private actions are linked to events which arose out of his official status, the nexus between the two can play a role in establishing that he acted under color of state law. *Rossignol v. Voorhaar*, 316 F.3d 516, 524 (4th Cir. 2003); *see Layne v. Sampley*, 627 F.2d 12–13 (6th Cir. 1980) (off-duty plainclothes police officer acted under color of state law when he shot plaintiff because "the animosity grew out of [the officer's] performance of his official duties"); *United States v. Causey*, 185 F.3d 407 (5th Cir. 1999) (police officer acted under color of state law when he conspired with civilians to murder a woman who had filed police brutality charges against him). Here, Haynes alleges that Richards was a correctional officer at Eastern, a facility owned and operated by the North Carolina Department of Adult Correction, at the time he assaulted Haynes. Compl. [DE-1] at 3, 6–7. Richards, and another officer, as a part of their duties were escorting Haynes to another part of the facility. Thus, Haynes has sufficiently established that Richards acted under the color of state law.

With respect to the "deprivation of rights" requirement, "[a]n inmate has a constitutional right to be secure in [his] bodily integrity and free from attack by prison guards." *Stewart v. Stewart*, C/A No.: 5:23-2951-JDA-KDW, 2024 WL 5273480, at *4 (D.S.C. Oct. 3, 2024) (internal

8

quotation marks omitted) (citing *Carr v. Hazelwood*, No. 7:07-cv-00001, 2007 WL 4410694, at *2 (W.D. Va. Dec. 14, 2007), adopted by, 2024 WL 5273463 (D.S.C. Dec. 31, 2024). For an inmate to successfully allege that his Eighth Amendment rights were violated because of excessive force, "a prisoner must show that 'the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the injury inflicted on the inmate was sufficiently serious (objective component).'" *Whisnant*, 2020 WL 1901085, at *4 (quoting *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008)).

The evidence demonstrates Richards acted with a sufficiently culpable state of mind, satisfying the subjective component. "In a claim for excessive force, the requisite state of mind is 'wantonness in the infliction of pain.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). To determine whether Richards acted with "wantonness," the court considers "the necessity for the application of force; the relationship between the need for force and the amount of force used; the extent of the injury inflicted; the extent of the threat to the safety of the staff and other prisoners, as reasonably perceived by the responsible officials based on the facts known to them at the time; and the efforts, if any, taken by the officials to temper the severity of the force applied." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Here, the video of the incident shows Richards physically lifting a restrained Haynes, his feet leaving the ground, and putting force behind slamming Haynes face first onto the concrete floor. Haynes testified Richards took this action in response to Haynes refusing to go to decontamination; however, policy dictates that inmates are allowed to refuse to go to decontamination, but it must be documented. Hr'g Tr. at 17. The specific circumstances of this incident show the force Richards applied against Haynes was unwarranted and excessive. Haynes

9

was restrained, he was not attacking Richards, there was another officer escorting Haynes with Richards, and yet Richards lifted and threw Haynes headfirst onto a concrete floor.

The objective component is met because Haynes's resulting injury was sufficiently serious, as it resulted in a fracture and laceration and required stitches. "The objective component asks whether the force applied was sufficiently serious to establish a cause of action." *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019).

As a result, the court should find that the facts, as alleged in the complaint and admitted to by Richards by virtue of default, establish that Richards, acting under color of state law, violated Haynes's constitutional right to be free from cruel and unusual punishment, and grant the motion for default judgment.

### B. Damages

Haynes asks the court to award him $200,000.00 in compensatory damages against Richards. As an initial matter, Haynes physical injuries are sufficient to sustain a claim for compensatory damages for emotional injuries under PLRA. *See Williams v. Shultiz*, No. 5:14-CT-3091-BO, 2019 WL 6974337, at *4 (E.D.N.C. Dec. 18, 2019) (finding the PLRA requirement satisfied where the record reflected that plaintiff suffered bruising and abrasions to various parts of his body), *aff'd sub nom. Williams v. Jordan*, 824 F. App'x 184 (4th Cir. 2020). However, Haynes did not request punitive damages in his complaint, so they are unavailable. *See* Compl. [DE-1] at 8 ("I want to be awarded money damages for the injury I suffered and the scar I got from it," but not specifying punitive damages); *Hudson*, 2023 WL 2818716, at *5 ("North Carolina case law makes clear that 'once default judgment is entered, the plaintiff is entitled to recover damages prayed for in the complaint, provided the facts alleged properly state a cause of action upon which the law gives relief' . . . . [I]t is very clear that where no answer is filed, the relief granted cannot

10

exceed that actually demanded somewhere in the complaint when considered in its entirety.") (quoting *Ahmed v. Porter*, No. 1:09-CV-101-RJC-DLH, 2011 WL 1043963, at *2 (W.D.N.C. Mar. 17, 2011)) (additional citations omitted).

Turning to the appropriate amount of damages, a court may award compensatory damages only to the extent supported by "competent, sufficient evidence" in the record "showing the nature and circumstances of the [constitutional] wrong and its effect on the plaintiff." *Price*, 93 F.3d at 1246, 1250 (quoting *Carey*, 435 U.S. at 263–64). Testimony "alone[ ] can support an award of compensatory damages" if the "evidence of emotional distress [is] demonstrable, genuine, and adequately explained." *Id.* at 1251. Such testimony, "which must be sufficiently articulated," *id.* at 1254, might demonstrate the nature and degree of emotional distress the plaintiff suffered or continues to suffer because of the defendant's misconduct, how his emotional distress manifests itself mentally or physically, specific changes in the plaintiff's emotional condition or behavior, and his need for continued counseling or treatment because of the defendant's misconduct. *See generally id.* at 1254–56; *Morton v. Johnson*, No. 7:13cv496, 2015 WL 4470104, at *8 (W.D. Va. July 21, 2015) (citing *Price*, 93 F.3d at 1254–56).

Richards lifted Haynes and threw him headfirst into a concrete floor. Richards was unprovoked and there was no justification for his actions. The medical records show the seriousness of Haynes's injuries and corroborate his testimony. At the hearing Haynes sufficiently articulated the effect the attack has had on him mentally, considering he continues to have to entrust his safety and wellbeing to correctional officers in the same position as the one that attacked him.

Considering the severity of Haynes's injury from this brief but violent encounter with Richards, the undersigned recommends the sum of $15,000.00 as sufficient, without being

excessive, to compensate Haynes for the injuries Richards caused him. Similar cases in this district have awarded plaintiffs compensatory damages ranging from $10,000 to $25,000. *See Whisnant*, 2020 WL 1901085, at *7 (awarding $15,000.00 in compensatory damages against a corrections officer who attacked the inmate plaintiff, unprovoked, causing serious injuries and emotional distress); *Sorto*, 2018 WL 4356767 at *1 (awarding $25,000.00 in compensatory damages after an officer attacked an inmate on multiple occasions); *Richardson v. Bostick*, No. 5:11-CT-3045-FL, 2014 WL 3508916, at *16 (E.D.N.C. July 14, 2014) (awarding $10,000.00 in compensatory damages after officers assaulted the inmate plaintiff on three occasions, resulting in physical injuries that required stitches, and emotional distress requiring psychiatric treatment).

In *Whisnant*, an inmate was attacked by an officer for one to two minutes. 2020 WL 1901085, at *3. The officer grabbed the inmate by the throat and eventually they both fell to the floor, where a nurse observed the officer slamming the inmate's head against the floor. *Id.* The court awarded Whisnant $15,000.00 in compensatory damages. *Id.* at *7. In *Sorto*, an inmate was attacked by an officer on multiple occasions. 2018 WL 4404714, at *3. On one occasion the officer ambushed the inmate in an area without surveillance cameras, slamming the inmate to the concrete floor before stomping on his head and neck. *Id.* The court awarded Sorto $25,000.00 in compensatory damages. *Id.* at *6. Sorto and Whisnant similarly suffered from mental distress following their attacks. *Id.* at *4; *Whisnant*, 2020 WL 1901085, at *3. Accordingly, an award of $15,000.00 is recommended.

## V. CONCLUSION

In accordance with the foregoing, it is RECOMMENDED that the motion for default judgment, [DE-103], be allowed; and that Haynes be awarded compensatory damages in the amount of $15,000.00.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **March 9, 2026** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b). Any response to objections shall be filed by within **14 days** of the filing of the objections.

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Submitted, the 23rd day of February, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge

13